**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

Chay Thao,

                              Petitioner,

vs.                                                          Case No. 0:26-cv-01760-DMT-LIB

Markwayne Mullin,[1] Secretary, Department of
Homeland Security et al.,

                              Respondents.

---

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

### INTRODUCTION

[¶ 1]    THIS MATTER comes before the Court on a Petition for Writ of Habeas Corpus filed on March 5, 2026. Doc. No. 1. The Respondents filed a Response on March 16, 2026. Doc. No. 10. Petitioner filed a Reply on March 17, 2026. Doc. No. 12.

[¶ 2]    Petitioner is a 56-year-old citizen of Laos. He entered the United States in 1979. He became a lawful permanent resident until 2012 when removal proceedings began against him.  He was arrested by ICE agents on September 13, 2012, and was eventually ordered removed due to his felony conviction for Unlawful Sexual Intercourse with a Minor, victim under 16-years-old and Petitioner over 21-years-old. He was released on an Order of Supervision on January 3, 2013. Subsequently, ICE determined there was a change in circumstances regarding Petitioner and they were going to deport him. He was arrested on December 11, 2025. That same day, he was given reasons for revocation of his order for supervision and submitted to an informal interview, where

---

[1] Secretary Mullin automatically substituted for former Secretary Kristi Noem pursuant to Fed. R. Civ. P. 25(d).

- 1 -

he indicated a fear he will be killed if he is sent back to Laos. On December 14, 2025, ICE submitted its formal Notice of Revocation of Release indicating it "will pursue new efforts to remove [him] to Laos."

[¶ 3]    On February 12, 2026, Petitioner filed his first Petition for Writ of Habeas Corpus asserting this process violates (1) 8 U.S.C. § 1231, (2) his procedural and substantive due process rights, and (3) the Accardi[2] doctrine. Thao v. Noem, Case No. 26-cv-01402, Doc. No. 1 (D. Minn. Feb. 12, 20216). This Court denied his first Petition on March 3, 2026. Id. at Doc. No. 10. In the current Petition, Petitioner raises virtually identical claims. Doc. No. 1, ¶¶ 50–64. For the reasons set forth below, the Petition is **DENIED** and **DISMISSED without prejudice**.

### DISCUSSION

[¶ 4]    As an initial matter, the Court has already ruled on the issues raised by Petitioner and hereby adopts its prior reasoning to the claims in this case. See Thao v. Noem, Case No. 26-cv-01402, Doc. No. 10 (D. Minn. March 3, 2026). Despite this, Petitioner claims the Court's prior Order did not address several issues now raised in this second Petition.

[¶ 5]    First, regarding his § 1231 argument, Petitioner claims he alleges he has served over 170 days in detention prior to his removal, and the Court's prior Order relied on his detention as less than 180 days. Petitioner was detained on December 11, 2025, which is approximately 110 days prior to the date of this Order, not 170. This falls within the presumptively reasonable six-month period of detention under Zadvydas v. Davis, 533 U.S. 678, 701 (2001). Furthermore, the Court will not combine this detention with Petitioner's detention in 2011 and 2012 for purposes of Zadvydas because that decision neither addressed a situation where an alien was re-detained for a change in circumstances nor suggests detention periods should be combined, which would greatly

---

[2] United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954).

impede removal efforts. See Barrios v. Ripa, Case No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("[I]f the Court counted detentions in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns. And adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals."). Accordingly, the Court concludes Petitioner's detention is still presumptively reasonable under Zadvydas.[3]

[¶ 6]    Second, Petitioner argues the Court's first order found Accardi inapplicable because the proper process was followed. He now claims to assert a new challenge to the legal sufficiency of the notice he was given. Even this new claim, however, is premised on the success of Petitioner's underlying claims, which the Court has rejected. See Accardi, 347 U.S. at 268 ("If Petitioner can prove the allegation [that the agency failed to follow its rules in a hearing] he should receive a new hearing."). Because the Court has rejected Petitioner's underlying claims, the Court finds there is no justification to set aside its action in detaining Petitioner while ICE attempts to remove him to Laos. See 8 C.F.R. § 241.4(i)(3).

[¶ 7]    Finally, Petitioner claims the Court failed to engage in the balancing test stated in Matthews v. Eldridge, 424 U.S. 319, 333 (1976), when deciding there has been no Procedural Due Process

---

[3] Even if Petitioner's detention surpasses six-months, this presumption "does not mean that every alien not removed must be released after six months. Rather, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Other courts have previously recognized several situations that meet this criteria: no country will accept the detainee, origin or other foreign country refuses travel documents or delays to the point of a presumption they will never be issued, or political conditions of the country of origin. Ahmed v. Brott, Case. No. 14-5000, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015). "In other words . . . there must be some indication that the government is either unwilling or, due to seemingly insurmountable barriers, incapable of executing an alien's removal." Id. These barriers do not exist in the present case because he is within the constitutional bounds for detention while Respondents attempt to secure his removal to Laos.

- 4 -

violation. This is because the record established ICE properly followed the correct statutory procedure when they arrested and detained Petitioner. In other words, there was no erroneous deprivation of any liberty interest and there remains no error. See Matthews, 424 U.S. at 333 (noting the second part of the test as "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards").

## CONCLUSION

[¶ 8]    For the reasons set forth above, the Petitioner's Habeas Petition is **DENIED**. This action is **DISMISSED without prejudice**.

[¶ 9]    **IT IS SO ORDERED**.

DATED April 1, 2026.

Daniel M. Traynor, District Judge
United States District Court